UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00156-JAW |
| | ) | |
| MATTHEW AYOTTE | ) | |

## ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE SURPLUSAGE FROM INDICTMENT

A defendant charged as a felon in possession moves to dismiss his indictment, claiming that it violates the Speedy Trial Act (STA), contains a multiplicitous charge, and charges an undifferentiated domestic violence assault which either does not meet the Armed Career Criminal Act's (ACCA) definition of a misdemeanor crime of domestic violence or renders the statute unconstitutional, and asserting that the ACCA is unconstitutional because it is void for vagueness. The defendant also moves to strike the name and nature of his prior felony convictions from the indictment, claiming that they are surplusage. Concluding that the indictment does not contain surplusage and that there is no valid reason to dismiss the indictment, the Court denies both motions.

## I.    STATEMENT OF FACTS

### A.    Procedural History

The Government filed a complaint against Matthew Ayotte on April 8, 2011, charging him with being a felon in possession of a firearm and ammunition, possession of a firearm after a misdemeanor crime of domestic violence, and

possession of a stolen firearm. *Compl.* (Docket # 1). On April 25, 2011, after learning that Mr. Ayotte was detained on state charges, the Government moved for a writ of habeas corpus *ad prosequendum* so that Mr. Ayotte could make his initial appearance in federal court. *Gov't's Application for Writ of Habeas Corpus* (Docket # 5). The Magistrate Judge granted the motion and issued the writ of habeas corpus *ad prosequendum* the following day, April 26, 2011. *Order Granting Mot. for Writ of Habeas Corpus* (Docket # 6); *Writ of Habeas Corpus* ad Prosequendum *Issued for Matthew Lucas Ayotte* (Docket # 7).

On April 28, 2011, the Government moved for Mr. Ayotte's pretrial detention. *Gov't's Mot. for Detention* (Docket # 9). Also on April 28, 2011, Mr. Ayotte made his initial appearance, at which the Magistrate Judge appointed defense counsel and Mr. Ayotte waived preliminary hearing. *Minute Entry* (Docket # 10). No action was taken that day on the motion for detention and Mr. Ayotte remained in state custody. *Minute Entry* (Docket # 10). The Magistrate Judge held a detention hearing on May 4, 2011, *Minute Entry* (Docket # 15), and on May 6, 2011, she set conditions of release for Mr. Ayotte. *Order Setting Conditions of Release* (Docket # 19).

On May 6, 2011, Mr. Ayotte filed an unopposed motion to continue the indictment date and a speedy trial waiver. *Def.'s Mot. to Exclude Time Under the STA* (Docket # 18). On May 9, 2011, the Magistrate Judge denied the motion to continue. *Order Denying Mot. to Continue* (Docket # 21). Mr. Ayotte then moved for reconsideration, *Def.'s Mot. to Reconsider Mot. to Exclude Time under the STA*

(Docket # 22), and after a hearing, the Magistrate Judge granted Mr. Ayotte's motion, finding that the requested exclusion was in the interests of justice. *Order* (Docket # 24); *Minute Entry* (Docket #25). The corresponding speedy trial order excluded the time from April 28, 2011 to June 16, 2011. *Speedy Trial Order* (Docket # 26).

On June 18, 2011, the Government moved *ex parte* for revocation of Mr. Ayotte's order of release and issuance of an arrest warrant on the ground that Mr. Ayotte had violated the conditions of his release. *Ex Parte Mot. for Hr'g for Revocation of Order of Release and for Issuance of a Warrant for Arrest* (Docket # 27). The Court issued an arrest warrant for Mr. Ayotte the same day, June 18, 2011. *Arrest Warrant* (Docket # 28). On August 29, 2011, Mr. Ayotte was located and arrested in the Western District of Kentucky. The Government declined to honor his request to remain in Kentucky and have the matter resolved there and, on September 1, 2011, the United States District Court for the Western District of Kentucky ordered him back to the District of Maine. *Rule 5(c)(3) Documents Received* Attach. 1 (*Order Remanding Hr'g*) (Docket # 29).

On September 23, 2011, in a three-count indictment, a federal grand jury indicted Mr. Ayotte for possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, possession of a firearm after a misdemeanor crime of domestic violence, and possession of a stolen firearm. *Indictment* (Docket # 30). On September 29, 2010, Mr. Ayotte appeared for arraignment before the Magistrate Judge and entered a plea of not guilty on all

counts. *Minute Entry* (Docket # 34). The Magistrate Judge ordered his detention pending trial, which was set for November 1, 2011. *Order of Revocation and Detention* (Docket # 37); *Trial List* (Docket # 36).

Mr. Ayotte moved to continue the pretrial motion deadline and trial date, as well as to exclude time from the STA calculations. *Def.'s Unopposed Mot. for Continuance of Pretrial Mot. Deadline and Trial Date* (Docket # 38). The Court granted the motions, pushing back the trial date to January 3, 2012. *Speedy Trial Order* (Docket # 39). The Court excluded the time period between October 13, 2011 and November 14, 2011 for pretrial motions and from November 1, 2011 to January 4, 2012 for trial. *Speedy Trial Order*.

On November 14, 2011, Mr. Ayotte stipulated to having a prior felony conviction. That same day, he filed the pending motions—a motion to dismiss and a motion to strike surplusage from the indictment. *Mot. to Dismiss* (Docket # 41) (*Def.'s Mot. to Dismiss*); *Mot. to Strike Surplusage from Indictment* (Docket # 42) (*Def.'s Mot. to Strike*). The Government filed its responses on December 5, 2011. *Opp'n to Mot. to Dismiss* (Docket # 44) (*Gov't's Dismiss Opp'n*); *Resp. to Mot. to Strike Surplusage from Indictment* (Docket # 45) (*Gov't's Strike Opp'n*). Mr. Ayotte replied on December 19, 2011. *Reply to Resp. to Mot. to Strike Surplusage from Indictment* (Docket # 48) (*Def.'s Strike Reply*); *Reply to Resp. to Mot. to Dismiss* (Docket # 50) (*Def.'s Dismiss Reply*). He again moved to continue the trial date. *Def.'s Unopposed Mot. for Continuance of Trial Date* (Docket # 51). The Court granted the motion and issued a speedy trial order excluding the time period

between January 4, 2012 and March 6, 2012 from calculations under the STA. *Speedy Trial Order* (Docket # 52).

### B.    The Indictment

The September 23, 2010 indictment alleges that Matthew Ayotte violated 18 U.S.C. §§ 922(g)(1) and 924(e).    *Indictment* at 2.    Count One charges that on February 12, 2011, Mr. Ayotte, "having been convicted in the State of Maine of crimes which under the laws of the State were then punishable by imprisonment for terms exceeding one year . . . knowingly possessed in and affecting commerce" a firearm and several rounds of ammunition, in violation of §§ 922(g)(1) and 924(e). *Indictment* at 1-2.  The indictment details in chronological order the state crimes for which it says Mr. Ayotte had been convicted: (1) gross sexual assault; (2) violation of condition of release; (3) burglary; (4) assault; (5) violation of sex offender registration, second offense; (6) assault on an officer; (7) failure to comply with sex offender registration act, third offense; (8) failure to appear after bailed; and (9) assault. *Indictment* at 1-2.

Count Two charges that on February 12, 2011, Mr. Ayotte "knowingly possessed a firearm and ammunition that had previously traveled in interstate commerce," having "previously been convicted of a misdemeanor crime of domestic violence," in violation of 18 U.S.C. § 922(g)(9). *Indictment* at 2-3.  The misdemeanor is cited as a "Domestic Violence Assault (Class D) in State of Maine" for which he was convicted on December 1, 2008. *Id.*

The final count alleges that on February 12, 2011, Mr. Ayotte "possessed [a] firearm and ammunition that had previously traveled in interstate commerce, either before or after they were stolen, knowing and having reasonable cause to believe that the firearm and ammunition were stolen." *Indictment* at 3. The indictment alleges a violation of 18 U.S.C. §§ 922(j) and 924(a)(2). *Id.* Significantly for purposes of this motion, the date of possession and the firearm and ammunition for each count are the same.

## II. DISCUSSION

### A. Motions to Dismiss

"[D]ismissing an indictment is an extraordinary step." *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)). The Court is mindful that it "should exercise its authority to dismiss cautiously, since to dismiss an indictment 'directly encroaches upon the fundamental role of the grand jury.'" *United States v. Thomas*, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007) (quoting *Whitehouse v. United States Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)). For this reason, unlike a complaint initiating a civil action, "an indictment is not generally subject to dispositive motion practice." *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009). Dismissal of an indictment by a federal court "is appropriately reserved, therefore, for extremely limited circumstances." *Whitehouse*, 53 F.3d at 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)).

"When grading an indictment's sufficiency," the Court of Appeals for the First Circuit instructs courts to "look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." *United States v. Guerrier*, No. 10-2315, ---F.3d---, 2011 WL 6415042, at *1 (1st Cir. Dec. 22, 2011). At this stage, the Court "must accept the allegations in the indictment as true." *United States v. Young*, 694 F. Supp. 2d 25, 27 (D. Me. 2010) (citation omitted). *See Guerrier*, 2011 WL 6415042 at *1 ("What counts in situations like this are the charging paper's *allegations*, which we must assume are true"). Therefore, a motion to dismiss is an inappropriate way "to test the sufficiency of the evidence behind an indictment's allegations." *Id.*

### 1.  Speedy Trial Act Violation

### a.  The Speedy Trial Act: An Overview

The STA requires "[a]ny information or indictment charging an individual with the commission of an offense [to] be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The purpose of this requirement "is to ensure that the defendant is not held under an arrest warrant for an excessive period without receiving formal notice of the charge against which he must prepare to defend himself." *United States v. Spagnuolo*, 469 F.3d 39, 43 (1st Cir. 2006) (quoting *United States v. Meade*, 110 F.3d 190, 200 (1st Cir. 1997)).

If an indictment or information has not been filed within the 30-day deadline, "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). The STA provides that "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the cases which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.*

## b. The Speedy Trial Motions

Mr. Ayotte contends that the indictment should be dismissed because it violates the 30-day deadline of § 3161(a). He argues that the 30-day indictment clock began on April 26, 2011, upon his "service of summons, by way of a writ of habeas corpus." *Def.'s Mot.* at 5-6. By Mr. Ayotte's count, sixty days of non-excludable time elapsed between his initial appearance on the complaint and the filing of the indictment on September 23, 2011. *Def.'s Mot. to Dismiss* at 4-6.

The Government argues that none of the thirty days allowed by the STA had elapsed.[1] *Gov't's Dismiss Opp'n* at 1-5.

## c. Discussion

---

[1] The Government also contends that Mr. Ayotte waived all of his speedy trial rights because he signed a plea agreement agreeing to such. However, that agreement has yet to be presented and accepted in open court. Because the Court concludes there is no speedy trial violation even without the existence of a plea agreement, the effect of this plea agreement need not be considered at this point.

The first task is to determine "the date on which [the defendant] was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Mr. Ayotte contends that the STA clock began on April 26, 2011, when he was "served with a summons" by way of the writ of habeas corpus *ad prosequendum*. *Def.'s Mot. to Dismiss* at 4.

He is wrong. In *United States v. Kelly*, 661 F.3d 682 (1st Cir. 2011), the First Circuit recently addressed a similar issue and concluded that "[i]ssuance of a writ of habeas corpus *ad prosequendum* is neither an arrest nor a summons" within the meaning of § 3161(b). *Id.* at 687. The defendant in *Kelly* was in federal custody in New York for one crime when a criminal complaint and arrest warrant were issued in Maine for another. *Id.* at 683. Subsequently, the Maine authorities, catching wind of Mr. Kelly's incarceration in New York, moved for a writ of habeas corpus *ad prosequendum*, and in due course, Mr. Kelly was transported to Maine under writ and consented to Maine detention on October 23, 2006. *Id.* at 684. Ultimately, he was returned to New York and was finally indicted in Maine on December 19, 2007, over a year after he first appeared in Maine. *Id.* Citing § 3161(b), Mr. Kelly moved to dismiss for violation of the STA. The First Circuit rejected the argument, explaining that "the issuance of the writ, by the literal terms of the statute, [does] not trigger the STA" because "writs of habeas corpus *ad prosequendum* are merely 'requests for temporary custody,' rather than an 'arrest' or a 'summons.'" *Id.* at 687-688 (quoting 18 U.S.C. § 3161(j)).

Applying *Kelly*, Mr. Ayotte's 30-day speedy trial indictment clock did not start on April 28, 2011 when he made his first appearance in this Court pursuant to a writ of habeas corpus *ad prosequendum*. In his Reply, Mr. Ayotte seeks to distinguish *Kelly* on its facts. He observes that in *Kelly*, the defendant was in the primary custody of the federal authorities in New York; whereas, in his case, he says that on May 2, 2011, he was "in primary federal custody . . . and was not under any order for detention by any other authority." *Def.'s Reply* at 2.

The Court is not convinced. First, the *Kelly* Court's ruling was based primarily on the nature of the writ of habeas corpus *ad prosequendum*, not on the character of the defendant's custody in the other jurisdiction:

> The question presented here is whether an appearance under a writ of habeas corpus *ad prosequendum* constitutes an "arrest" or "summons" under the STA. We conclude that it does not.

*Kelly*, 661 F.3d at 687. When the writ of habeas corpus issued on April 26, 2011, Mr. Ayotte was clearly being held on state charges in the Cumberland County Jail in Maine. *App. for Writ of Habeas Corpus* (Docket # 7). Mr. Ayotte subsequently was brought to federal court where he made his initial appearance on April 28, 2011. That day, the Magistrate Judge made the following notation:

> [D]efendant remains in state custody; no action taken on motion for detention at this time.

*Minute Entry* (Docket # 10). As of April 28, 2011, even under Mr. Ayotte's argument, *Kelly* applies and the speedy trial clock had not begun to run because he was still in state custody and was brought to federal court on a writ of habeas corpus *ad prosequendum*.

What happened next is a bit blurry. Although not strictly a part of the record, apparently state authorities decided not to continue to detain Mr. Ayotte and federal authorities decided to keep him. If the federal authorities had returned Mr. Ayotte to state custody and state authorities had decided to continue to incarcerate him, the speedy trial clock would not have begun to run while he remained in state custody.

This is not what happened. Instead, on April 28, 2011, the federal prosecutor filed a motion for detention, which the Magistrate Judge initially held in abeyance on the assumption that Mr. Ayotte would be returned to state custody. *Mot. for Detention* (Docket # 9). Once the state of Maine declined to hold him, the federal Government motion for detention became the effective mechanism for his continued custody and the Court views his continued detention to be subject to the provisions of the STA. As of that point, which appears to have been sometime between April 28, 2011 and May 4, 2011, the federal Government was holding Mr. Ayotte "in connection with" the charges in the criminal complaint, 18 U.S.C. § 3161(b), and the speedy trial clock began. The Government's motion for detention resumed with a detention hearing on May 4, 2011, *Minute Entry* (Docket # 15), but on May 6, 2011, the Magistrate Judge released Mr. Ayotte from federal detention. *Order Setting Conditions of Release* (Docket # 19).

None of this really matters because Mr. Ayotte himself moved to exclude the time under the STA between April 28, 2011 and June 16, 2011. *Def.'s Mot. to Exclude Time Under the STA* (Docket # 18). *See* 18 U.S.C. § 3161(h)(7) (excluding

"[a]ny period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial"). After the Magistrate Judge initially denied the motion, Mr. Ayotte moved for reconsideration and convinced the Magistrate Judge that a speedy trial exclusion for that period would serve the ends of justice. *Speedy Trial Order* (Docket # 26) ("The time period between April 28, 2011 and June 16, 2011 is hereby excluded from calculations under the Speedy Trial Act pursuant to Title 18, United States Code, Section 3161 *et seq*."). As Mr. Ayotte was the moving party for this Speedy Trial Order and obtained it—even moved to reconsider its initial denial—he is hardly in a position to now contend that he should not be bound by the Order he sought. *See United States v. Huete-Sandoval*, No. 10-1413, ---F.3d---, 2011 WL 6823186, at *4 (1st Cir. Dec. 29, 2011) (addressing the so-called "sandbagging argument").

This brings the Court to June 16, 2011. The clock began to run on June 17th. But on June 18, 2011, the Government moved to revoke Mr. Ayotte's order of release and to issue an arrest warrant, stopping the clock again. Ex Parte *Mot. for Hr'g on Revocation of Order of Release and for Issuance of a Warrant for Arrest* (Docket # 27). At that point, only one day—June 17th—had not been excluded from the speedy trial count. The Court issued the arrest warrant on June 18, 2011. *Warrant for Arrest* (Docket # 28). The speedy trial clock stopped when Mr. Ayotte could not be found for arrest. *See* 18 U.S.C. § 3161(h)(3)(A) (excluding "[a]ny period

of delay resulting from the absence or unavailability of the defendant"). The clock stayed stopped while Mr. Ayotte was unavailable from June 18, 2011 until August 28, 2011, when he was arrested in the Western District of Kentucky under the June 18, 2011 arrest warrant. *Id.* Under these calculations, from June 17, 2011 to August 29, 2011, just one day counted on the speedy trial clock.

From August 29, 2011 to September 1, 2011, Mr. Ayotte was processed in the Western District of Kentucky for transfer to the District of Maine. This period is excluded under 18 U.S.C. § 3161(h)(1)(E) (excluding "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure").

On September 1, 2011, the United States District Court for the Western District of Kentucky ordered Mr. Ayotte's removal to the District of Maine. The STA allows exclusion of "delay resulting from transportation of any defendant from another district . . . except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F). According to the Government, Mr. Ayotte was returned to the District of Maine "on or about September 22, 2011." *Gov't's Opp'n* at 5. He was indicted the next day. *Indictment* (Docket # 30). Excluding the period from September 2, 2011 through September 11, 2011, and starting the speedy trial count again on September 12th, and not including September 23rd, the date the indictment was filed, only 12 days (11 in September and 1 in June) had elapsed.

The Court concludes there is no STA violation.

## 2. Count Two of the Indictment

### a. Multiplicitous Claim

Mr. Ayotte next claims that Count Two of the Indictment should be dismissed because it charges the same offense as Count One and thereby violates the Fifth Amendment of the Constitution. According to Mr. Ayotte, possession of the same firearm on the same date is charged in both Count One and Count Two of the indictment, rendering the second count multiplicitous. *Def.'s Mot. to Dismiss* at 7-10. The Government responds that the two counts do not violate the Double Jeopardy clause of the Fifth Amendment because it is appropriate to charge defendants with separate counts of unlawful firearm possession on the basis of each disqualifying status. *Gov't's Dismiss Opp'n* at 8-9. The Government concedes that Mr. Ayotte may not suffer two convictions or sentences on the indictment but argues that it may present evidence and seek a verdict on each count alleging a separate disqualifying status. *Gov't's Dismiss Opp'n* at 8 (citing *Ball v. United States*, 470 U.S. 856, 859-65 (1985)).

"Multiplicity is charging the same offense in two or more counts of an indictment or information." *United States v. Widi*, 697 F. Supp. 2d 140, 144 (D. Me. 2010) (citing *United States v. Lilly*, 983 F.2d 300, 302 (1st Cir. 1992)). The First Circuit has adopted the Supreme Court's test for determining whether an indictment is multiplicitous. "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine

whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *United States v. Serino*, 835 F.2d 924, 930 (1st Cir. 1987) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

Although under 18 U.S.C. § 922, each provision requires proof of a fact which the other does not—under (g)(1) that the defendant had a felony conviction and under (g)(9) that the defendant had a domestic violence misdemeanor conviction—Mr. Ayotte cites caselaw from other circuits, which concluded that § 922(g) does not support multiple convictions based on a single firearm possession because Congress intended the crime to be one of possession, not the possessor's status. In *United States v. Richardson*, 439 F.3d 421 (8th Cir. 2006), the Eighth Circuit explained that "Congress intended the allowable unit of prosecution to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification." *Id.* at 422; *see Bell v. United States*, 349 U.S. 81, 81 (1955) (describing the unit of prosecution test); *United States v. Johnson*, 130 F.3d 1420, 1425-26 (10th Cir. 1997) (holding that the possession of a firearm by a felon who was also an illegal drug user comprised a single offense); *United States v. Munoz-Romo*, 989 F.2d 757, 759-60 (5th Cir. 1993) (holding that the possession of a firearm by an illegal alien who was also a felon comprised only one offense); *United States v. Winchester*, 916 F.2d 601, 605-08 (11th Cir. 1990) (holding that possession of a firearm by a fugitive from justice who was also a felon comprised a single offense).

In *United States v. Shea*, 211 F.3d 658 (1st Cir. 2000), the First Circuit discussed a challenge to convictions for being a felon in possession and a drug user and possessing the same firearm. *Id.* at 672-73. In *Shea*, the First Circuit wrote:

> Since each count involves an element that the other does not, the Double Jeopardy Clause would not bar multiple convictions and punishments under the familiar *Blockburger* test. However, as a matter of statutory construction, several circuits have held that Congress did not intend to inflict multiple punishments where a drug-using, former felon possessed a firearm. The government concedes this point and says that the shorter sentence should be vacated (along with the statutory $50 assessment).

> However, the government says that the two convictions should stand because no objection was made to the indictment on multiplicity grounds and the objection is therefore waived. Whether there is a multiplicity objection is a nice question and arguably depends on attributing a further refinement in intent to Congress; <u>it is clear enough that the government is entitled to get both theories before the jury, whether in one count or two.</u> In all events, we do not treat the multiple 'convictions' as clear error.

*Shea*, 211 F.3d at 673 (emphasis added) (internal citations omitted).

Whatever disquiet may exist elsewhere, *Shea* remains good law in the First Circuit and this Court must apply it. This means that the Government "is entitled to get both theories before the jury, whether in one count or two" and to proceed in this case with counts for both felon in possession and prior conviction for misdemeanor crime of domestic violence. Under First Circuit law, to do so violates neither the Double Jeopardy Clause nor congressional intent under § 922(g). Even though the Government is allowed to proceed to trial on both felon in possession and misdemeanor crime of domestic violence possession counts involving the same possession, there are various mechanisms available for ensuring that Mr. Ayotte

does not suffer twice for "a single instance of unlawful firearms possession." *Gov't's Dismiss Opp'n* at 11.

This does not, however, end the discussion. Citing *Old Chief v. United States*, 519 U.S. 172 (1997), Mr. Ayotte seeks to strike as surplusage the felonies listed in Count One of the indictment, *Def.'s Mot. to Strike*, and in his motion to dismiss, he argues that the Court should dismiss Count Two—the misdemeanor crime of domestic violence count—because he has agreed to stipulate that he is a prohibited person. *Def.'s Mot. to Dismiss* at 10. The Court addresses these arguments in its discussion of Mr. Ayotte's motion to strike.

### b. Failure to State a Federal Offense and Violation of Second Amendment

Mr. Ayotte also seeks dismissal based on what he claims are two flaws with the second count of the indictment. First, he argues that his prior conviction under Maine's Domestic Violence Assault statute does not qualify as a "prior misdemeanor crime of domestic violence" and thus fails to state a federal offense. Second, he contends that § 922(g)(9) is unconstitutional as applied to prior misdemeanor convictions that involve only reckless conduct or offensive physical contact because such conduct is not sufficiently related to predicting future violence so as to deprive Mr. Ayotte of a core constitutional right.

In Mr. Ayotte's first challenge to Count Two of the indictment, he notes that mere offensive contact can result in a § 207-A conviction so, Mr. Ayotte argues, an undifferentiated conviction would not satisfy the "use or attempted use of physical force" requirement in the federal definition of a misdemeanor crime of violence.

*Def.'s Mot. to Dismiss* at 10-11. He admits, however, that this issue "has been decided against him by the First Circuit in *United States v. Booker*, 644 F.3d 12 (1st Cir. 2011), *pet. cert. filed* Oct. 3, 2011." *Def.'s Mot. to Dismiss* at 11. To this, the Government agrees and submits that "[a]bsent a change in First Circuit law, Defendant's claim that Count 2 of the indictment fails to state a federal offense should be rejected." *Gov't Dismiss Opp'n* at 13.

Applying—as it must—First Circuit law and consistent with *Booker*, the Court rejects Mr. Ayotte's first contention that a conviction under the generic assault statute in Maine, 17-A M.R.S.A. § 207-A, does not qualify under § 922(g)(9) as a prior "misdemeanor crime of domestic violence." Recklessness satisfies the mens rea requirement for conviction. *Booker*, 644 F.3d at 21. The Court need not discuss further what the First Circuit has authoritatively resolved.

After conceding that his facial argument against Count Two faces an insurmountable First Circuit hurdle, Mr. Ayotte presses a second argument: that the criminal charge in Count Two violates the Second Amendment as applied to him. *Def.'s Mot. to Dismiss* at 11. However, as pointed out by the Government, in order to succeed on an as-applied challenge, Mr. Ayotte needs to "present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections." *Gov't Dismiss Opp'n* at 14 (quoting *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011)); *United States v. Brown*, 436 Fed. Appx. 725, at *1 (8th Cir. 2011). In other words, Mr. Ayotte must show that his claim implicates the core right identified in

*Heller*—the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense. *See United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010). This he fails to do and, under the limitations of a motion to dismiss, could not do in any event. *Guerrier,* 2011 WL 6415042 at *1. Because Mr. Ayotte has not presented any evidence to underpin an as-applied challenge, the Court declines to dismiss Count Two on the basis of his unsupported as-applied constitutional challenge.

### 3. Armed Career Criminal Act

Mr. Ayotte moves to dismiss the allegations in the indictment that reference the ACCA because he maintains that the penalty provision, § 924(e)(2)(B)(ii), is unconstitutionally vague. The ACCA is a statutory enhancement, which requires imposition of a mandatory minimum fifteen-year term of imprisonment for recidivist defendants convicted under 18 U.S.C. § 922(g). 18 U.S.C. § 924(e). Specifically, section 924(e) provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1). "Violent felony" is defined in § 924(e)(2)(B):

> "any crime punishable by imprisonment for a term exceeding one year . . . that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(i)-(ii).

According to Mr. Ayotte, if § 924(e)(2)(B)(ii) is void for vagueness, he would not be eligible for application of that penalty section because he does not any serious drug offenses and he may or may not have three prior offenses that qualify as violent felonies under § 924(e)(2)(B)(i). *Def.'s Mot to Dismiss* at 12-15. Therefore, because Congress failed to establish "a sentencing enhancement provision that allows a person of ordinary intelligence to determine, prior to engaging in proscribed activity, what the punishment for having so engaged might be," Mr. Ayotte contends that the ACCA enhancement allegation should be dismissed from the indictment. *Def.'s Mot. to Dismiss* at 17. The Government responds that § 924(e) is not a crime charged in the indictment but rather a sentencing provision that was cited in the indictment only to give Mr. Ayotte notice of the Government's intention to seek enhancement. *Gov't's Dismiss Opp'n* at 17. It further maintains that the motion regarding a potential sentence enhancement is premature at this stage. *Gov't's Dismiss Opp'n* at 17-19.

### a. Prematurity

The Court agrees with the Government that Mr. Ayotte's motion is premature. As the Government noted, although neither due process nor the statute "require pre-trial notice of the possibility of enhanced sentencing for recidivism," the First Circuit "would normally expect the government to give a defendant pre-trial notice of possible sentence enhancement." *See United States v. Craveiro*, 907 F.2d 260, 264 (1990). Here, that is just what the Government did. Citing § 924(e) in

Count 1 of the indictment merely puts Mr. Ayotte on notice that the Government intends to seek this sentencing enhancement should it obtain a conviction.

The Government's position is reinforced by First Circuit precedent holding that § 924(e) is not a statutory element of an offense, but a sentencing enhancement. *See United States v. Hicks*, 575 F.3d 130, 144-45 (1st Cir. 2009); *United States v. Duval*, 496 F.3d 64, 81 (1st Cir. 2007); *United States v. Rumney*, 867 F.2d 714, 718 (1st Cir. 1989) ("[T]he three felonies provision is for sentence enhancement and is not an element of a heightened crime").

Mr. Ayotte's only reply to this argument is to suggest that having the Court address the constitutionality of the ACCA now "may not be entirely frivolous." *Def.'s Dismiss Reply* at 6. The reason, according to Mr. Ayotte, is that the § 924(e) issue might arise at trial because "the jury's verdict cabins the sentencing discretion of the Court" and there "are some circumstances in which a court may instruct a jury regarding the fact that a conviction carries a mandatory minimum sentence." *Def.'s Dismiss Reply* at 6. The Court disagrees. "It is well established that when a jury has no sentencing function, it must reach its verdict without regard to what sentence might be imposed." *United States v. Cormier*, 226 F.R.D. 23, 27 (D. Me. 2005) (citing *Shannon v. United States*, 512 U.S. 573, 579 (1994)).

The Court declines to strike the indictment's reference to a potential statutory sentencing enhancement.[2]

### b.    Advisory Opinion

---

[2] If Mr. Ayotte is concerned that the indictment, including its statutory reference, will be presented to the jury, he may raise the issue at trial and the Court will address it then.

The Court cannot reach Mr. Ayotte's "void for vagueness" argument at this point because to do so would amount to an advisory opinion. A statute is unconstitutionally vague "only if it prohibits an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application.'" *United States v. Nieves-Castano*, 480 F.3d 597, 603 (1st Cir. 2007) (internal citation omitted). The First Circuit cited the Supreme Court's holding that "the residual clause of the Armed Career Criminal Act's definition of 'violent felony,' which reads, 'otherwise involves conduct that presents a serious potential risk of physical injury to another,' is not unconstitutionally vague or 'so indefinite as to prevent an ordinary person from understanding what conduct it prohibits.'" *Butler v. O'Brien*, No. 10-1235, --- F.3d ---, 2011 WL 6118529, at *8 (1st Cir. Dec. 8, 2011) (quoting *James v. United States*, 550 U.S. 192, 210 n.6 (2007)).

Here, Mr. Ayotte is concerned that the non-burglary convictions listed in Count One of the indictment may not qualify as violent felonies under § 924(e)(2)(B)(ii). But it remains to be seen whether Mr. Ayotte will be convicted of Count One, whether the Government will seek enhancement under § 924(e), and whether any two of Mr. Ayotte's remaining prior convictions will qualify as violent felonies under the ACCA. While the Court can appreciate Mr. Ayotte's recognition of his obligation to allege a defect in the indictment before trial, the issue he has raised is not one of defect but one of application. Whether the ACCA will apply to Mr. Ayotte by way of § 924(e)(2)(B) is a matter for sentencing if he is convicted, not a matter to be resolved before trial, while he remains presumed innocent.

## B.    Motion to Strike

In a separate motion, Mr. Ayotte moves to strike what he claims is surplusage from the indictment.  He argues that because he has stipulated to having been previously convicted of a felony, the parts of the indictment referring to the name and nature of his prior convictions have become more prejudicial than probative.  *Def.'s Mot. to Strike* at 1-2 (citing *Old Chief v. United States*, 519 U.S. 172 (1997) and FED. R. EVID. 403).  The Government responds that it will abide by the *Old Chief* requirements at trial, but asserts that the name and nature of the prior felony convictions are essential to the charge in the indictment and should not be stricken.  *Gov't's Strike Opp'n* at 1-2.  Mr. Ayotte replies that the indictment need only track the language of the statute.  *Def.'s Strike Reply* at 1.  Mr. Ayotte contends that because it is sufficient for the indictment to allege that he had been convicted of a crime punishable by more than one year in prison at the time of his alleged possession of a firearm, the name and nature of the past convictions are surplusage. *Def.'s Strike Reply* at 1-2.

Federal Rule of Criminal Procedure 7(d) provides that the court may, upon the defendant's motion, strike surplusage from the indictment.  FED. R. CRIM. P. 7(d).  "This serves to protect the defendant 'against immaterial or irrelevant allegations in an indictment, which may be prejudicial.'"  *United States v. Lewis*, 40 F.3d 1325, 1346 (1st Cir. 1994) (quoting FED. R. CRIM. P. 7(d), advisory committee note).  "A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a useless averment that may be

ignored." *United States v. Ayala*, 289 F.3d 16, 22 (1st Cir. 2002) (quoting *United States v. Miller,* 471 U.S. 130, 136 (1985)). "In other words, surplusage in an indictment need not be proved." *Id.* (internal citation and quotation marks omitted).

To establish a violation of § 922(g)(1), the Government must establish each of the following elements beyond a reasonable doubt: (1) the defendant had a prior felony conviction for an offense punishable by imprisonment for a term exceeding one year; (2) the defendant knowingly possessed the firearm; and (3) the firearm had travelled in or affected interstate commerce. *United States v. Scott*, 564 F.3d 34, 39 (1st Cir. 2009). In this context, the Third Circuit has recently "rejected the idea that a defendant's stipulation to an element of an offense removes that element entirely from the jury's consideration." *United States v. Higdon*, 638 F.3d 233, 240 (3d Cir. 2011).

Mr. Ayotte conflates what the Grand Jury charged in the indictment with the Government's evidence at trial. Here, the indictment contains allegations about Mr. Ayotte's prior convictions, as well as information about his knowing possession of an interstate firearm. The conviction is essential to an essential element of the offense charge in the indictment—both for the fact that it is legally classified as a felony and for the fact that it occurred before the current felon-in-possession charge. Therefore, Mr. Ayotte's prior convictions are not surplusage and the Court will not strike them from the indictment.

Mr. Ayotte, however, raises a different issue in citing *Old Chief*. Under *Old Chief*, evidence of the name or nature of a prior offense may not be introduced at trial if the defendant seeks to stipulate to his status as a felon. *United States v. Meadows*, 571 F.3d 131, 144 (1st. Cir. 2009) (citing *Old Chief*, 519 U.S. at 172). As the Supreme Court said, the prior conviction element in § 922(g)(1) carries a risk of unfair prejudice to the defendant when evidence of the name or nature of the prior offense is introduced, especially when it might "lure a juror into a sequence of bad character reasoning." *Old Chief*, 519 U.S. at 185.

Here, Mr. Ayotte has stipulated that he "had been convicted of a crime punishable by imprisonment for a term exceeding one year within the meaning of Title 18, United States Code, Section 922(g)(1) prior to February 12, 2011." *Stip. No. 1* (Docket # 40). In response, the Government has represented that before attempting to introduce any evidence of his prior convictions, the prosecution will seek approval at sidebar. *Gov't's Strike Opp'n* at 1. Of course, there are ways that the convictions may become admissible either during the Government's case-in-chief or its rebuttal. However, at this point, the Court does not need to reach forward and rule on evidentiary issues that may never be presented at trial. The Court declines to strike the convictions listed in Count One of the indictment.

Finally, the Court returns to the *Old Chief* argument Mr. Ayotte implicitly raised in his motion to dismiss. The logic runs that because he has agreed to stipulate to his felony status for purposes of Count One, the Court should dismiss Count Two because "Mr. Ayotte is stipulating for purposes of trial that he is a

prohibited person." *Def.'s Mot. to Dismiss* at 10. He therefore contends that a dismissal of Count Two "would not prejudice the Government." *Id*. The flaw in this argument is that Mr. Ayotte has not agreed to stipulate that he is a person previously convicted of a misdemeanor crime of domestic violence, which forms the basis for Count Two of the indictment. It does not logically follow that the Court should dismiss Count Two because Mr. Ayotte has stipulated to an element of Count One especially because in *Shea* the First Circuit ruled that the Government could proceed to trial on both counts.

But hidden in this argument is another issue. The Government's election to proceed to trial on both Count One—felon in possession—and Count Two—prior conviction for misdemeanor crime of domestic violence—presents a point of potential confusion for a jury. Assuming the Government went forward on Count One, the jury would learn that the Defendant has stipulated that he had been convicted of a felony before he allegedly possessed the firearm and presumably the trial would focus on whether he actually possessed the firearm on February 12, 2011.[3] If there is no similar stipulation that the Government has satisfied the prior conviction for a misdemeanor crime of domestic violence element in Count Two, the Government would be allowed to proceed with evidence that Mr. Ayotte had been so previously convicted. But evidence of a prior misdemeanor conviction for a crime of domestic violence would raise the same concerns about prejudice that evidence of the nature of the prior felony conviction raised in *Old Chief*. The difference is that

---

[3] This assumes that there is no serious question as to whether the firearm was connected with interstate commerce. 18 U.S.C. § 922(g).

in *Old Chief*, the defendant offered to stipulate that "the prior-conviction element was satisfied." 519 U.S. at 186. Even so, having taken pains to avoid the *Old Chief* prejudice to Mr. Ayotte on Count One, it seems odd to allow a similar prejudice to occur on Count Two. But this is up to Mr. Ayotte. If he wishes to avail himself of the protections of *Old Chief* on Count Two, the onus is on him to present an appropriate stipulation regarding the predicate crime.

## III. CONCLUSION

The Court DENIES the Defendant's Motion to Dismiss for Speedy Trial Act Violation( Docket # 41), his Motion to Dismiss based on Multiplicity (Docket # 41), his Motion to Dismiss Count 2 as Failing to State an Offense or alternatively as Violating Second Amendment (Docket # 41), and his Motion to Dismiss Allegations of Applicability of Armed Career Criminal Act based on Unconstitutional Enactment (Docket # 41), and the Court DENIES the Defendant's Motion to Strike Surplusage from the Indictment (Docket # 42).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 11th day of January, 2012