UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00156-JAW |
| | ) | |
| MATTHEW AYOTTE | ) | |

**ORDER ON MOTION FOR RECONSIDERATION**

The Court denies Matthew Ayotte's motion for reconsideration of its Order in which it concluded that he qualified as an armed career criminal based on three prior convictions for violent felonies: burglary, gross sexual assault and assault on a corrections officer. The Court concludes that, contrary to Mr. Ayotte's position, two intervening United States Supreme Court decisions, *Sekhar v. United States*, 133 S. Ct. 2720 (2013) and *Descamps v. United States*, 133 S. Ct. 2276 (2013), do not require a different result.

I. **STATEMENT OF FACTS**

On February 27, 2012, Matthew Ayotte pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (2012). *Minute Entry* (ECF No. 62). After the guilty plea, an issue arose as to whether based on his criminal history, Mr. Ayotte qualified as an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B) (2012) (ACCA). On April 3, 2013, after the parties briefed the issue, the Court issued an extensive order, analyzing Mr. Ayotte's previous convictions and concluding that he qualifies as an armed career criminal and faces a mandatory minimum term of fifteen years pursuant to

18 U.S.C. § 924(e). *Order on Armed Career Criminal Act Status* (ECF No. 85) (*Order*). Specifically, the Court concluded that Mr. Ayotte's 1998 Gross Sexual Assault and his 2007 Assault on an Officer convictions were ACCA predicate convictions and, when combined with a 2000 Burglary conviction, Mr. Ayotte was subject to the enhanced penalty provisions of the ACCA. *Id.* at 33.

On August 6, 2013, Mr. Ayotte moved for reconsideration. *Def.'s Mot. to Recons.* (ECF No. 93) (*Def.'s Mot.*). In his motion, Mr. Ayotte highlights two decisions of the United States Supreme Court, *Sekhar* and *Descamps*, each issued after the Court's April 3, 2013 Order, that he contends should cause the Court to reconsider its ACCA conclusion. After the Government responded, *Gov't's Resp. to Def.'s Mot. for Recons.* at 2 (ECF No. 96) (*Gov't's Resp.*), Mr. Ayotte replied. *Reply to Gov't Resp. to Mot. to Recons.* (ECF No. 97).

## II. *SEKHAR*, EXTORTION AND VIOLENCE

### A. Mr. Ayotte's Position

To set the scene, in its Order this Court addressed the broad definition of gross sexual assault under the version of 17-A M.R.S. § 253(2)(B) that existed in 1998, when Mr. Ayotte was convicted of the offense. *Order* at 7-14. Because of the breadth of acts potentially covered under the Maine gross sexual assault statute and because of the lack of clarifying *Taylor / Shepard* documents[1] as to what Mr.

---

[1] In *Taylor v. United States*, 495 U.S. 575, 602 (1990), and *Shepard v. United States*, 544 U.S. 13, 26 (2005), the Supreme Court allowed the sentencing court to review a limited set of documents, such as the charging document, any plea agreement, any colloquy between the judge and the defendant, and comparable judicial records to determine whether a prior conviction qualified as an ACCA predicate. Here the available *Taylor / Shepard* documents did not clarify which statutory subsection Mr. Ayotte was convicted of violating.

2

Ayotte actually did to commit the crime, the Court concluded that a violation of 17-A M.R.S. § 253(2)(B) did not categorically constitute a violent felony under the ACCA.

Nevertheless, the Court counted Mr. Ayotte's 1998 conviction for gross sexual assault under the residual clause of the ACCA. The Court concluded that under Maine law, a violation of section 253(2)(B) was "roughly similar in kind" to extortion and presented "a degree of risk similar to the degree of risk posed by [extortion]." *Order* at 13 (quoting *United States v. Jonas*, 689 F.3d 83, 86-87 (1st Cir. 2012)). In fact, the Court concluded that extortion, which could be accomplished without a threat or use of physical violence, presented a less significant risk of physical violence than a gross sexual assault, which necessarily involves by any definition a sexual act. *Id.* at 13.

Mr. Ayotte maintains that in *Sekhar*, the Supreme Court noted that Congress defined extortion for Hobbs Act purposes as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." *Def.'s Mot.* at 3 (quoting *Sekhar*, 133 S. Ct. at 2723-24 (quoting 18 U.S.C. § 1951(b)(2)). Mr. Ayotte argues that because ""[a]ll of these terms are related to violence, either actual or threatened", this Court erred in concluding that Mr. Ayotte's gross sexual assault, which may not have involved physical violence, was analogous to extortion or at least presented a greater risk of physical violence than extortion. *Id.*

3

B. **The Government's Response**

The Government responds by pointing out that *Sekhar* did not address whether extortion requires a threat of physical violence under the ACCA; rather, it addressed whether "[a]ttempting to compel a person to recommend that his employer approve an investment" constituted 'the obtaining of property of another' under the Hobbs Act." *Gov't's Resp.* at 2. The Government asserts that the Supreme Court's analysis of the meaning of extortion under the Hobbs Act differs from the way the courts have analyzed whether a prior conviction constitutes a violent felony under the ACCA. *Id.*

C. **Discussion**

The Court readily concludes that *Sekhar* does not require a different result. First, the *Sekhar* Court defined the issue solely as "whether attempting to compel a person to recommend that his employer approve an investment constitutes 'the obtaining of property from another' under 18 U.S.C. § 1951(b)(2)." *Sekhar*, 133 S. Ct. at 2723. The Supreme Court necessarily was focused on the definition of "obtaining of property from another" under the Hobbs Act, not the means of obtaining it. The only portion of the opinion that addresses the violent or nonviolent nature of Hobbs Act extortion consists entirely of a quotation of the statute itself. *Id.* at 2725. The balance of the opinion deals with whether "obtaining property from another" includes an employee attempting to compel his employer to approve an investment. *See id.* at 2723-27. *Sekhar* is an opinion about the nature of property, not about the violent or nonviolent character of extortion. The *Sekhar*

Court concluded that attempting to extract an investment recommendation "was not *obtainable property* under the Hobbs Act." *Id.* at 2726 (emphasis in original). This conclusion does not, as Mr. Ayotte claims, "tend[] to contradict" this Court's conclusion that "'extortion can be accomplished—and presumably often is accomplished—without either physical contact or physical threat.'" *Def.'s Mot.* at 3 (quoting *Order* at 13).

Second, even if *Sekhar* could be somehow construed as addressing the means by which a person commits Hobbs Act "extortion," the Court is leery of extrapolating much from *Sekhar* to ACCA determinations. The ACCA attempts to distinguish between persons whose history of violence reflected in their criminal convictions merits enhanced punishment and those whose history does not. In *Sykes v. United States*, 131 S. Ct. 2267 (2011), the Supreme Court explained that the "ACCA limits the residual clause to crimes 'typically committed by those whom one normally labels "armed career criminals,"' that is, crimes that 'show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.'" *Id.* at 2275 (quoting *Begay v. United States*, 553 U.S. 137, 146 (2008)). Importing the *Sekhar* analysis of the Hobbs Act into well-developed Supreme Court and First Circuit ACCA caselaw is unwarranted. This is especially true where the First Circuit has already used the Model Penal Code's "widely accepted" definition of extortion to evaluate the analogous provision in the Sentencing Guidelines. *United States v. DeLuca*, 17 F.3d 6, 9 (1st Cir. 1994)

5

("We can envision no sound reason for looking to the Hobbs Act to borrow a definition of a fairly well understood term").

Third, to the extent the Hobbs Act definition of extortion should control (which the Court doubts), Mr. Ayotte misquoted the full definition, lopping off critical language. Mr. Ayotte quotes 18 U.S.C. § 1951(b)(2) as: "'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear . . . .'" *Def.'s Mot.* at 3 (quoting 18 U.S.C. § 1951(b)(2)). Taking this truncated language, he argues:

> The *Sekhar* decision tends to contradict this conclusion, as Congress chose to define "extortion" as meaning "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." 18 U.S.C. § 1951(b)(2). All of these terms are related to violence, either actual or threatened, *see Begay v. United States*, 553 U.S. 137, 145 (2008) ("extortion is 'purposely' obtaining property of another through threat of, e.g. inflicting 'bodily injury'"), which is not an element of GSA-B.

However, Mr. Ayotte dropped significant statutory language in the ellipsis. The full language of the extortion definition in 18 U.S.C. § 1951(b)(2) reads:

> The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, *or under color of official right*.

(emphasis added). In interpreting this last phrase—the one Mr. Ayotte omitted—the First Circuit has written:

> [T]he accepted interpretation of the 'under color of official right' language has evolved in such a manner that it does not exclude the introduction of proof of threats inherent in the public office. The rationale is, that subsumed in the official title lies a dormant power, the office itself becomes the threat, the ominous spectre capable of retaliating when provoked.

6

*United States v. McKenna*, 889 F.2d 1168, 1174 (1st Cir. 1989) (quoting *United States v. Kelly*, 772 F.2d 873, 877 (1st Cir. 1983)); *United States v. Boylan*, 898 F.2d 230 (1st Cir. 1990) ("[T]he crux of the matter is whether the official accepts the gratuity knowing that payment is being tendered because of his public office").

As the "under color of official right" did not fit Mr. Ayotte's argument that the Hobbs Act definition of extortion requires violence (which extortion by a public official does not), Mr. Ayotte simply snipped off the inconvenient statutory language and made the argument as if the statute were enacted as he quoted it. When the full statutory definition of extortion in the Hobbs Act is considered, the term covers not only violent acts of extortion but also non-violent acts of extortion carried out by a public official.[2]

*Sekhar* does illuminate the historical antecedent for the crime of extortion, observing that the crime "originally applied only to extortionate action by public officials, but was later extended by statute to private extortion." *Sekhar*, 133 S. Ct. at 2724. Thus, the Hobbs Act inclusion of extortion by public officials under color of official right is consistent with the original definition of the crime. But *Sekhar* offers no reason to conclude that extortion by a public official carries a greater implication of physical violence than a threat, whether physical or non-physical, by a person leading to a compelled or induced sexual act.

---

[2]  A recent example of the application of this part of the Hobbs Act was the conviction in this Court of Carole Swan, a selectperson for the town of Chelsea, Maine for using her position as a selectperson to extort money from a local contractor in exchange for town contracts. *United States v. Swan*, No. 12-cr-00027-JAW, *Jury Verdict* (ECF No. 273) (D. Me. Sept. 17, 2013). In the Carole Swan trial, there was no evidence of a threat or actual use of violence.

7

In sum, Mr. Ayotte's 1998 conviction for gross sexual assault stands as a valid predicate conviction for the ACCA.

### III. *DESCAMP,* ASSAULT ON A CORRECTIONS OFFICER AND VIOLENT FELONY

#### A. Mr. Ayotte's Position

Mr. Ayotte also argues that *Descamp* should invalidate, as an ACCA predicate conviction, his 2007 conviction for assault on a corrections officer. In its Order, the Court concluded that based on *United States v. Jonas*, 689 F.3d 83 (1st Cir. 2012), the 2007 assault conviction qualified as an ACCA predicate. *Order* at 19-21. Mr. Ayotte challenges this determination "[t]o the extent that the First Circuit may require Mr. Ayotte to present the arguments that indicate *Jonas* is inconsistent with Supreme Court precedent first to this Court in order to preserve them for any appeal that may follow." *Def.'s Mot.* at 4. Mr. Ayotte next decries the ACCA itself as unconstitutional under provisions of both the Fifth and Sixth Amendments to the United States Constitution. *Id.* at 6-10.

#### B. The Government's Response

In its response, the Government rejects Mr. Ayotte's attempts to link his case to "the infirmities that plagued the California predicate offense rejected by the Supreme Court in *Descamps*." *Gov't's Resp.* at 3. It urges the Court to conclude that it was in fact bound by prior Supreme Court and First Circuit precedent. *Id.* at 3-7.

8

C. **Discussion**

The first section of Mr. Ayotte's argument assaults the First Circuit's reasoning in *Jonas*. *Id.* at 5 ("This line of reasoning presents the problem of substituting metaphor for elements of a prior offense"). As Mr. Ayotte implicitly acknowledges, however, his problem with the First Circuit's reasoning is with the First Circuit itself, not this Court. As an inferior court, which owes allegiance to the Court of Appeals for the First Circuit, this Court remains bound to apply *Jonas*. *Gately v. Comm. of Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993) ("The doctrine of *stare decisis* renders the ruling of *law* in a case binding in future cases before the same court or other courts owing obedience to the decision").

The First Circuit has acknowledged that "there may be occasions when courts can—and should—loosen the iron grip of *stare decisis*." *United States v. Reveron Martinez*, 836 F.2d 684, 687 n.2 (1st Cir. 1988). But such a departure "demands special justification." *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984). Here, Mr. Ayotte's justification is unconvincing because *Descamps*, the Supreme Court case that Mr. Ayotte claims changed the legal landscape, did no such thing. To the contrary, the Supreme Court in *Descamps* carefully reviewed its precedent and concluded that the Ninth Circuit failed to properly apply the modified categorical approach that the Supreme Court adopted in a series of cases beginning in 1990 with *Taylor*. *Descamps*, 133 S. Ct. 2283-93. In short, this Court views *Descamps* as a reiteration of Supreme Court precedent, not as a deviation from settled authority, and no basis for ignoring a recently-decided First Circuit case.

9

Moreover, in *Jonas*, the First Circuit applied the Supreme Court's decision in *James v. United States*, 550 U.S. 192 (2007), which recognized that "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious risk of injury to another," *Jonas*, 689 F.3d at 87 (quoting *James*, 550 U.S. at 208). The First Circuit observed that "[t]his determination hinges on a commonsense assessment of the risk of violence that typically ensues during the commission of the crime." *Id.* Thus, as the Supreme Court did in *Sykes*, the First Circuit in *Jonas* recognized that defying law enforcement—in *Jonas*, as here, by assaulting an officer—presents a special type of enhanced risk of violence that merits inclusion as an ACCA predicate offense. *Id.* at 89. Because *Descamps* affords no basis on which to disregard *Jonas*, the Court remains bound to follow its precedent. Although some ACCA predicate conviction determinations are analytically challenging, the First Circuit's *Jonas* decision for assault on a corrections officer provides a commonsense, practical rule that finds clear application in this case. Consequently, there is no reason to revise the Court's conclusion that Mr. Ayotte's 2007 conviction under 17-A M.R.S. § 752-A(1)(B) is valid predicate conviction for the ACCA.

IV. **CONCLUSION**

The Court DENIES Matthew Ayotte's Motion for Reconsideration (ECF No. 93).

SO ORDERED.

        <u>/s/ John A. Woodcock, Jr.</u>
        JOHN A. WOODCOCK, JR.
        CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of October, 2013